UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Garett Lucyk,                                            Case No. 3:20-cv-2340

           Plaintiff,

v.                                                  MEMORANDUM OPINION
                                                           AND ORDER

Materion Brush, Inc., *et al.*,

           Defendants.

## I.   Introduction

On October 14, 2020, Plaintiff Garett Lucyk filed a complaint against his former employer Defendants Materion Brush, Inc. and Materion Corporation (collectively, "Materion") alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), and violations of Ohio and common law. (Doc. No. 1). Lucyk also sought certification of a collective action for the FLSA violation and two class actions for the state and common law violations. (*Id.*). Opt-in Plaintiff Garrett Abraham joined the litigation on October 20, 2020. (Doc. No. 3). On April 15, 2022, Lucyk and Abraham filed a motion for conditional certification of an FLSA collective action and proposed nationwide notice to potential opt-in plaintiffs. (Doc. No. 25). Materion opposed the motion, (Doc. No. 29), and Plaintiffs filed a reply. (Doc. No. 31).

## II.   Background

Materion is an advanced materials supplier that supplies beryllium, beryllium alloys, and beryllium composites for use in a variety of electrical, electronic, thermal, and structural applications. (Doc. No. 25 at 9; *see also* Doc. No. 29 at 7). Materion operates 17 facilities in the United States

which are responsible for mining, producing, processing, and manufacturing metal alloys containing beryllium. (Doc. No. 25 at 9).

Lucyk was employed at the Elmore, Ohio facility as an hourly, non-exempt production employee in the Rod, Bar, and Tube unit ("RBT") until his resignation on February 3, 2021. (Doc. No. 29 at 7). Abraham was and is employed at the Elmore facility as Lead Operator in the RBT. (*Id.*). RBT is one of 15 manufacturing units at the Elmore facility. (*Id.* at 8).

To comply with OSHA safety standards for beryllium processing, Materion employees working in certain manufacturing units, such as RBT, are required to wear company-issued protective clothing and safety gear ("PPE"). (Doc. No. 25 at 10; *see also* Doc. No. 29 at 8). At each facility, Materion maintains "site specific lists of operations and job titles with beryllium exposure." (Doc. No. 25 at 11). Employees working in these units don and doff the PPE before and after their shifts in designated locations, as well as shower in a designated shower area after their shifts. (*Id.* at 10-11). The distance from the designated areas to the employee's work unit varies. (Doc. No. 29 at 8).

Plaintiffs allege the donning process, as well as the accompanying walk to RBT, takes 15 to 20 minutes per shift, but they are only allotted 6 minutes for donning, meaning they perform 9 to 14 minutes of uncompensated work prior to each shift. (Doc. No. 25 at 11-12). A similar process is repeated at the end of the shift. Plaintiffs are allotted 12 minutes at the end of each shift for walking, doffing, and showering; but Plaintiffs allege this process takes 15-20 minutes per shift, meaning they perform 3 to 8 minutes of uncompensated work after each shift. (*Id.* at 12-14). While Plaintiffs only ever worked at the Elmore facility, they allege Materion employees nationwide are subject to similar policies which do not appropriately compensate employees for performing the required donning and doffing before and after each shift.

Materion asserts the donning and doffing policy, including the 18 minutes of additional pay, has been in place at the Elmore facility since 1967 but other Materion facilities have unique donning and doffing policies depending on local factors, including the extent of beryllium used. (Doc. No. 29 at 8-9). Materion also asserts the donning and doffing of certain PPE, such as respirators, gloves, and ear plugs, need not take place during the 18-minute allotment, as this equipment is put on and taken off at the employee's work area – not in the designated locker areas. (*Id.* at 9).

### III.  STANDARD

An FLSA plaintiff may sue an employer on behalf of himself and those similarly situated who "opt-in" by filing their written consent to be a party in the court where the action is brought. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). There are two steps to collective action certification: the notice or conditional certification stage, and the decertification stage. *Id.*

At the first stage, "the court must determine whether the named plaintiff has established a 'colorable basis' for the named plaintiff's assertion that other potential plaintiffs are similarly situated to the named plaintiff." *Osman v. Grube, Inc.,* No. 16-cv-802, 2017 WL 2908864, at *5 (N.D. Ohio July 7, 2017) (citing *Comer*, 454 F.3d at 546). This is a "fairly lenient standard," requiring only a "modest factual showing" that the named and potential plaintiffs are similarly situated. *Comer*, 454 F.3d at 547. Yet, despite this lenient standard, "conditional certification is neither automatic nor presumed." *Shell v. Pie Kingz, LLC*, 415 F. Supp. 3d 769, 772 (N.D. Ohio 2019).

A plaintiff may meet this standard by showing "they suffer from a single, FLSA-violating policy, and [that] proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Osman*, 2017 WL 2908864, at *6 (citing *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)); *see also Brodzenski v. Stonemor Partners, L.P.*, No. 1:14-cv-2517, 2015 WL 3442323, at *1 (N.D. Ohio May 28, 2015) (plaintiffs may show similarly situated where "'their claims

[are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct'") (quoting *O'Brien*, 575 F.3d at 585).

During this stage, the court "typically do[es] not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Osman*, 2017 WL 2908864, at *6. It is only after the completion of discovery at the second stage of certification that the court will "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547.

### IV. ANALYSIS

#### A. Conditional Certification of Collective Action

In support of their motion for conditional certification, Plaintiffs submitted declarations purporting to show a common theory of Materion's alleged statutory violations. (*See* Doc. Nos. 25-7 & 25-8). These declarations alleged: (1) Plaintiffs were employed at the Materion Elmore facility; (2) were only paid for work performed during their scheduled shifts; (3) they were not paid for all time spent "donning and doffing" before or after their scheduled shifts; (4) as a result, they were not paid for all time worked, including overtime hours; and (5) they observed other employees at the Elmore facility being subject to the same "donning and doffing" policy. (*Id.*).

After review, I find Plaintiffs have made a "modest factual showing" that other potential plaintiffs are similarly situated. *Comer*, 454 F.3d at 547. Plaintiffs' declarations allege a common FLSA violation related to donning and doffing at the Elmore facility, and they also allege this same donning and doffing policy is applied to their coworkers. *See, e.g., Peterson v. Cleveland Inst. of Art*, No. 1:08-cv-1217, 2011 WL 1230267, at *4 (N.D. Ohio March 30, 2011) ("First-hand experience can be sufficient to meet the lenient standard for sending notice to potential class members."); *Roberts v. J.R. Eng'g, Inc.*, 2019 WL 5653340, at *6-7 (N.D. Ohio Oct. 31, 2019) (relying on declarations to evidence a common theory of alleged violations was sufficient to meet modest burden).

Based on their declarations, Plaintiffs seek conditional certification of a nationwide class to include all hourly employees "who worked for Materion Corporation (or any of its wholly owned subsidiaries) at any of its manufacturing facilities . . . who were required to don and doff protective clothing or safety gear . . .." (Doc. No. 25 at 1). Materion argues this is too broad of a collective because the declarations only evidence Plaintiffs' knowledge of operations at the Elmore facility, and more particularly, just one unit within that facility.[1] In reply, Plaintiffs assert Materion has acknowledged it subjects hourly employees to a common policy, i.e., hourly employees are allotted and compensated for donning and doffing time, although the length of time may vary depending on location. (Doc. No. 31 at 2-3). Plaintiffs argue, therefore, that the common question which unites the collective is whether such allotted time is sufficient to perform the necessary donning and doffing. (*Id.* at 4).

The proposed nationwide collective is not supported by the limited allegations found in Plaintiffs' declarations. These declarations assert personal knowledge as to only one of Materion's 17 manufacturing facilities. Plaintiffs also cite to the Employee Handbook and the declaration of Materion's Chief Human Resources Officer Allen Reid[2] to show a common policy of paid time for donning and doffing companywide. (*See* Doc. No. 25 at 11-14 & Doc. No. 31 at 7). But these citations also demonstrate that Materion's donning and doffing policies are facility specific. (*See* Doc. No. 25-10 & Doc. No. 29-3 at 2-3).

Because Plaintiffs only have firsthand knowledge of practices at one facility, they can only speculate that FLSA violations related to donning and doffing are a "common experience across

---

[1] Materion requests that, in the event conditional certification is granted, it be limited to the RBT unit at the Elmore facility. (*See* Doc. No. 29 at 16-19).

[2] "Other facilities address their own policies in their respective handbooks. Some local policies provide for more than 18 minutes of work time for donning and doffing, while others provide less, all based on localized factors." (Doc. No. 29-3 at 2-3).

5

geographically diverse work environments with different job responsibilities and management." *Gallagher v. General Motors Co.*, No. 19-11836, 2020 WL 3487649, at *6 (E.D. Mich. June 26, 2020); *see also Carlson v. Leprino Foods Co.*, No. 1:05-cv-798, 2006 WL 1851245, at *5 (W.D. Mich. June 30, 2006) (refusing to certify nationwide collective where plaintiff submitted affidavit regarding only one location despite the existence of "nine work places, nine organization structures and more than nine policies."); *Gomez v. ERMC Property Mgmt. Co., LLC,* 2014 WL 1513945, at *2 (N.D. Ohio April 16, 2014) (declining nationwide conditional certification where plaintiff could only speculate as to whether other employees at other locations were subject to the same FLSA violating conduct); *Peer v. Grayco Mgmt. LLC*, 2017 WL 2403269, at *4 (M.D. Tenn. June 2, 2017) (declining conditional certification where plaintiff's affidavit made allegations as to only one of defendant's 24 locations); *Conklin v. 1-800 Flowers.com, Inc.*, 2017 WL 3437654 (S.D. Ohio Aug. 10, 2017) (declining to certify nationwide collective on basis of three declarations from one location because the inference of a nationwide policy was too tenuous).

As such, Plaintiffs' allegations are insufficient for me to infer that the putative members from other facilities are "victims of a common policy or plan that violated the law." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006); *see also Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) (internal quotation omitted) (To certify a collective action, in general, plaintiffs must "show that the class members were together the victims of a single decision, policy, or plan[.]").  Because Plaintiffs' declarations only attest to conduct at the Elmore facility, "there is no way the Court can even make an initial determination as to whether [other employees] have purportedly suffered from the same or similar FLSA violation alleged by [Plaintiffs' declarations]." *Cook v. Brewster Cheese Co.*, No. 5:20-cv-445, 2020 WL 5891904, at *5 (N.D. Ohio Oct. 5, 2020).

Thus, I grant Plaintiffs' motion for conditional certification in part, as to the Elmore facility, and deny it in part, as to a nationwide collective. *See Cook*, 2020 WL 5891904, at *4 ("Though it is unclear at this time who exactly the declarants witnessed [donning and doffing], the observations do not appear to be limited to any particular department at the [facility].").

### B. Form of Notice

Plaintiffs are to file an amended notice reflecting the above limited collective, as well as incorporating the below rulings regarding the contents of the notice within 14 days of this Order on the motion for conditional certification. Within 10 days of Plaintiffs' filing of the amended notice, Materion is ordered to produce a list of names of putative collective members along with their last known address, dates of employment, and email address in an electronic or importable format.

#### 1. Notice Method

Plaintiffs requested notice to putative plaintiffs be distributed by U.S. Mail, email, and text message. (Doc. No. 25 at 21). Materion objects to notice by text message, and more generally, to multiple notice methods. (Doc. No. 29 at 19). To "increase the chance that potential plaintiffs will be notified by at least one method of notice[,]" notice shall be provided by U.S. Mail and email. *See Osman*, 2017 WL 2908864, at *7.

#### 2. Judicial Neutrality

Materion objects to the inclusion of the Court's name on the header of the proposed notice as it may be perceived as judicial endorsement of the action. (Doc. No. 29 at 20). In lieu of a general statement of the Court's name and location as proposed by Plaintiffs, the notice shall be corrected to include the case name and caption, which may include the Court's location. *See Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2020 WL 3496150, at *7 (S.D. Ohio June 29, 2020) ("Including the case caption is not misleading nor a judicial endorsement of the lawsuit."). Further, at two different sections of the proposed notice, it informs putative members that I have not ruled on the

7

merits of the matter. (*See* Doc. No. 25-2 at 1 & 4). This is sufficient to adequately inform potential plaintiffs of the court's neutral position, though I order that such disclaimers be capitalized in their entirety. *See Osman*, 2017 WL 2908864, at *7.

### 3. Potential Costs

Materion requested the notice be amended to include a disclaimer that the putative plaintiffs may be liable for Materion's litigation costs. (Doc. No. 29 at 20). Plaintiffs object to this amendment on two grounds, first, because it may confuse potential plaintiffs as the case is being litigated on a contingency basis, and second, because it may unfairly dissuade participation. (Doc. No. 31 at 13). "Multiple courts have approved the inclusion of a statement notifying potential opt-in plaintiffs that they may be responsible for the defendant's costs if the defendants prevail in the litigation, concluding that it would help potential opt-in plaintiffs make an informed decision about whether to participate in the action." *Kilmer v. Burntwood Tavern Holdings LLC*, No. 1:19-cv-2660, 2020 WL 2043335, at *3 (N.D. Ohio April 28, 2020). Plaintiffs shall include the following language in the amended notice: "You have no obligation to pay attorney fees to Plaintiffs' Counsel unless the lawsuit prevails, though you may be responsible for paying costs incurred during the lawsuit regardless of the outcome of the case." *Gomez*, 2014 WL 3053210, at *2.

### 4. Tolling and Notice Period

Plaintiffs' proposed notice period was "three years preceding the filing of the Complaint." (Doc. No. 25 at 1). Materion argues the time period should count backwards from the date of this Order regarding conditional certification. (Doc. No. 29 at 20). In response, Plaintiffs assert the parties "entered into several tolling agreements" which extend the notice period, but they provided only one such agreement with their briefing. (*See* Doc. No. 31 at 12-13 & Doc. No. 31-1).

The attached agreement tolls the statute of limitations for 60 days between January 21, 2021 through March 22, 2021. (Doc. No. 31-1). Plaintiffs have not submitted evidence that Materion

agreed to continue to toll the statute of limitations for the putative class beyond that time. (*See* Doc. No. 31 at 12-13; *see also* Doc. Nos. 15-22). Further, there is no evidence that Materion agreed to toll the statute of limitations back to the date of the original filing of the Complaint. As such, the notice period will be set as three years prior to the date this Order issued, plus an additional 60 days to account for the agreed upon tolling period.

Plaintiffs may submit additional argument and evidence related to tolling agreements in the event they move for equitable tolling.

**5. Alternative Counsel**

Materion requested the notice be amended to identify counsel for Materion, as well as notify potential plaintiffs that they may select their own counsel. (Doc. No. 29 at 20). Materion provides no argument for why their counsel should be identified in the notice, and I cannot see a reason to do so. Further, Plaintiffs' proposed notice already includes the statement: "If you choose not to join this lawsuit, you may file your own lawsuit and select the attorney of your choice." (Doc. No. 25-2 at 3). No additional language is necessary.

**6. Website**

Materion objects to receipt of opt-in notices "via an unidentified website, the content of which is apparently left entirely to the control of Plaintiff and his lawyers." (Doc. No. 29 at 20). Plaintiffs clarified they are requesting a website created and maintained by a neutral claims administrator, and that the content of the website "shall be the language in the notice that the Court ultimately approves." (Doc. No. 31 at 14). Courts regularly approve notice procedures which permit the electronic submission of consent forms. *See Kilmer*, 2020 WL 2043335, at *4. Accordingly, I approve Plaintiffs' proposed notice procedure which includes a website containing the court-approved notice and electronic submission of consent forms.

### 7. Preservation of Relevant Evidence

Materion objects to the inclusion of this section in the proposed notice because it is prejudicial and assumes potential plaintiffs will be entitled to overtime pay. (Doc. No. 29 at 20). While Plaintiffs are correct there is a general duty to preserve relevant evidence, the language of the proposed notice goes beyond this simple directive. Therefore, the proposed notice is to be amended to delete the first sentence of the first paragraph, and the second paragraph in its entirety; the remaining language of the proposed notice may stand. (*See* Doc. No. 25-2 at 4).

### 8. Opt-In Period

Materion objects to a 60-day opt-in period and instead, requests 45 days. "Since [Materion] failed to cite a reason why it would be prejudiced by an additional fifteen days, I find the opt-in period of 60 days requested by [Plaintiffs] to be reasonable." *Osman*, 2017 WL 2908864, at *8. As dual forms of initial notice were authorized, I do not find a reminder notice necessary. *Id.*

## V. Conclusion

For the foregoing reasons, I grant in part and deny without prejudice, in part Plaintiffs' Motion for Conditional Certification. (Doc. No. 25). Plaintiffs are to submit an amended notice within 14 days of the issuance of this Order reflecting the changes required by this ruling. Within 10 days of Plaintiffs' filing of the amended notice, Materion is ordered to produce a list of names of putative collective members along with their last known address, dates of employment, and email address in an electronic or importable format.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge