UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Garett Lucyk,
*individually and on*
*behalf of others similarly situated*,                                    Case No. 3:20-cv-2340

                                      Plaintiffs,

            v.                                              MEMORANDUM OPINION
                                                                      AND ORDER

Materion Brush Inc., *et al.*,

                     Defendants.


    There are two pending motions before me: 1) an unopposed motion for approval of

attorneys' fees, litigation expenses, and class representative service awards, (Doc. No. 42); and 2) an

unopposed motion for final approval of settlement.  (Doc. No. 43).  For the reasons stated below, I

grant the motions.

## I.      BACKGROUND

    On October 14, 2020, Plaintiff Garett Lucyk filed a complaint against his former employer

Defendants Materion Brush, Inc. and Materion Corporation, (collectively, "Materion"), alleging

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), and violations of Ohio

and common law.  (Doc. No. 1).  Lucyk also sought certification of a collective action for the FLSA

violation and two class actions for the state and common law violations.[1]  (*Id.*).  Materion denied the

allegations.  (Doc. No. 9; Doc. No. 43-1 at 5).

---

[1] Opt-in Plaintiff Garrett Abraham joined the litigation on October 20, 2020.  (Doc. No. 3).

Materion is an advanced materials supplier that supplies beryllium, beryllium alloys, and beryllium composites for use in a variety of electrical, electronic, thermal, and structural applications. Materion operates 17 facilities throughout the United States.  Lucyk was employed at the Elmore, Ohio facility as an hourly, non-exempt production employee in the Rod, Bar, and Tube unit ("RBT") until his resignation on February 3, 2021.  Abraham was and is employed at the Elmore facility as Lead Operator in the RBT.  Plaintiffs alleged Materion did not adequately compensate them and others like them for the time spent pre- and post-shift donning and doffing personal protective equipment.

Following the filing of the complaint, the parties engaged in discussions, voluntarily exchanged payroll and time records, and also agreed to mediation in March 2022.  (Doc. No. 43-1 at 3).  The mediation was undertaken in good faith by both parties but was unsuccessful.  (*Id*).  On April 18, 2022, Plaintiffs filed a motion for FLSA conditional certification seeking to certify a nationwide collective action.  (Doc. No. 25).

On August 2, 2022, I granted in part and denied in part Plaintiffs' motion.  (Doc. No. 32).  I found that Plaintiffs had adequately shown that others at the Elmore, Ohio facility were similarly situated individuals and authorized notice to production employees who had worked at this facility since June 15, 2018.  (*Id*.).  But I declined to conditionally certify a nationwide collective because Plaintiffs' allegations and declarations were localized only to the Elmore, Ohio facility and did not sufficiently demonstrate similarity at all Materion facilities.

Prior to the issuance of notice to the proposed collective, the parties decided to attend a second mediation.  (Doc. No. 36).  On November 17, 2022, the parties attended a full-day mediation and were able to reach an agreement.  The decision to reach an agreement was informed by the parties' voluminous exchange of documents such as entry/exit swipe records, time-keeping policies,

2

training manuals, payroll and timekeeping data, pay rates, job descriptions, and damages modeling. (Doc. No. 43-1 at 4, 6-8).

The parties have agreed for the purposes of settlement to certify this lawsuit as a class action pursuant to Fed. R. Civ. P. 23. (Doc. No. 43-3 at 6). The Settlement Agreement[2] provides substantial relief for approximately 870 individuals who are defined as:

> All current hourly production employees who worked for Materion Brush Inc. and Materion Corporation at their Elmore, Ohio facility between October 14, 2017 and January 16, 2023, and who were required to don and doff protective clothing or safety gear at the worksite at the start and end of their work shifts.

(Doc. No. 43-3 at 2). The Agreement provides that Materion, without conceding the validity of Plaintiffs' claims and without admitting liability, will create a Gross Settlement Fund of $1,500,000 to cover the full and final resolution of all claims in the lawsuit. (*Id.* at 4). Deducted from this fund will be attorneys' fees, litigation expenses, settlement administration expenses, and Class Representative incentive awards, resulting in the Net Settlement Fund.

Settlement Class Members will receive a pro rata share calculated by dividing the Net Settlement Fund by the total number of weeks the Settlement Class were employed. This amount will then be multiplied by the total number of weeks that each member was employed during the Class Period to achieve the Individual Settlement Amount. (Doc. No. 43-1 at 9).

The requested Class Representative incentive awards in the amount of $7,500 each to Garett Lucyk and Garrett Abraham are modest and reflective of the recovery achieved and the time and effort spent by Plaintiffs in enabling and prosecuting this lawsuit. These awards are in addition to their Individual Settlement Amounts.

---

[2] All initial-capped terms in this Memorandum Opinion and Order, unless otherwise defined, shall have the same definitions as set forth in the Settlement Agreement, which is attached as Exhibit A to Plaintiffs' unopposed motion. (Doc. No. 43-3).

On December 29, 2022, Plaintiffs filed an unopposed motion for preliminary approval of settlement, appointment of Class Representative and Class Counsel, and certification of the Settlement Class. (Doc. No. 40). I granted the motion on March 30, 2023. (Doc. No. 41).

On April 27, 2023, the Settlement Administrator issued notice to 870 Class Members. (Doc. No. 43-5). This notice provided detailed information about the lawsuit, including the amount of the settlement, and procedures for opting-in, requesting exclusion, and objecting to the Settlement Agreement. The notices were distributed by first-class U.S. mail and in the event a notice was returned undeliverable, the Settlement Administrator sought updated address information and re-sent the notice. The objection and exclusion period closed on June 12, 2023. Only ten people requested exclusion from the Settlement Class and no objections to the Settlement Agreement were lodged.

Considering these facts and as more fully explained below, I find that the parties' settlement is fair and reasonable in all respects.

## II.  ANALYSIS

### A. Factors in Support of Approval of Settlement

To determine if a class action settlement is appropriate, a district court should examine the following:

> (1) risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Harsh v. Kalida Mfg., Inc.,* No. 3:18-cv-2239, 2021 WL 4145720, at *4 (N.D. Ohio Sept. 13, 2021) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

4

### 1.  Notice Provided

The notice provided in this case was adequate to satisfy due process of the Class Members and to reasonably apprise them of their rights. *See, e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process).  The Settlement Administrator issued notice to 870 Class Members.  (Doc. No. 43-5).  This notice provided detailed information about the lawsuit, including the amount of the settlement, and procedures for opting-in, requesting exclusion, and objecting to the Settlement Agreement.  The notices were distributed by first-class U.S. mail and in the event a notice was returned undeliverable, the Settlement Administrator sought updated address information and re-sent the notice.  After the second attempt at contact, only five notice packets were returned as undeliverable.  (Doc. No. 43-5).

### 2.  Absence of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Id.*  Here, the terms of the settlement were reached after full-day mediation with experienced wage and hour mediator Michael Russell.  (Doc. No. 43-4).  The Sixth Circuit has recognized this fact weighs in favor of approving the settlement.  *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016) (finding a "formal mediation session" weighed against the possibility of fraud or collusion); *see also Waggoner v. U.S. Bancorp*, No. 5:14-cv-1626, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016) (finding no risk of fraud or collusion where the settlement was the result of, *inter alia*, "an involved mediation before an experienced mediator").  As there is no evidence of fraud or collusion and this settlement represents the resolution of a bona fide wage and hour dispute, I find this factor weighs in favor of settlement.

### 3. Complexity, Expense, and Likely Duration of the Litigation

The Sixth Circuit has acknowledged the complexity of a FLSA and Rule 23 hybrid wage and hour class/collective action lawsuit. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6ᵗʰ Cir. 2019). This case is no exception.

Prior to notice of settlement, this case was still in an early posture. It was expected that further discovery would be exchanged, depositions conducted, and experts were to be engaged, a process that Class Counsel estimated would take at least another 6-12 months. (Doc. No. 43-1 at 6). In addition, further motion practice including Rule 23 certification and FLSA final certification would be required before a trial could proceed. Class Counsel estimated continued litigation would take approximately 2-3 years and result in significant increases in attorneys' fees and costs. (*Id.*); *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (finding expense and possible duration of the litigation are factors to be considered in evaluating a settlement).

I find this lawsuit involves complex issues of fact, contested legal theories, and without settlement would likely continue for a considerable duration and involve increased expense. As such, this factor weighs in favor of settlement.

### 4. Amount of Discovery Engaged in by Parties

The parties engaged in a robust informal exchange of documents and electronically-stored materials to evaluate the merits of this case and ultimately, to settle it. (Doc. No. 43-4); *see UAW v. Gen. Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) ("In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced.").

Counsel reviewed and exchanged documents related to pay rates, dates of employment, job duties, questionnaires of potential Opt-In plaintiffs, time and payroll records, entry/exit logs, policies, manuals, and damages modeling. (Doc. No. 43-1 at 5). Thus, the facts supporting the legal claims were thoroughly researched and evaluated by the parties, and the value of the claims properly assessed. This is a sufficient exchange of information to support and inform settlement negotiations by experienced counsel. I find this factor weighs in favor of settlement.

### 5. Likelihood of Success on the Merits

A court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)). But, "[i]n evaluating settlements, courts are not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Déjà Vu,* 925 F.3d at 895-96.

Materion has raised numerous defenses to Plaintiffs' claims which, if required to be put before the court for determination, could jeopardize Plaintiffs' recovery. Materion asserted that it was not liable, that neither class nor collective action posture would be appropriate, that its actions were not willful, and that liquidated damages were not appropriate. A failure on any of these positions could severely limit Plaintiffs' ability to recover on their claims and represent legitimate risks to Plaintiffs' success in this litigation. On the other hand, Materion faces the prospect of class-wide liability to approximately 870 current and former employees as well as liquidated damages and attorneys' fees following lengthy and expensive litigation. By settling, these risks are eliminated, and participating class members are guaranteed a significant recovery. Considering the numerous legal and factual issues identified, the terms of the settlement are reasonable.

In the complaint, Plaintiffs alleged a maximum of 22 minutes of unpaid work per day. Materion argued this is a grossly inflated number and must be offset by other policies and other break time that is afforded to their production employees. Taking those facts as produced in discovery into consideration, Class Counsel determined a reasonable estimation of maximum unpaid time was 6 minutes per day. Utilizing this estimate and assuming Plaintiffs would be successful on all claims, Plaintiffs' expert created a damages analysis which calculated Materion's maximum exposure (including overtime wages, straight time wages, liquidated damages on all unpaid wages, and interest) to be $3,444,822. (Doc. No. 43-4). The Gross Settlement Fund of $1,500,000 represents a recovery of 43.5% of the maximum damages available and 87% of the maximum wage damages available. The average estimated payment per Class Member is $1,101.92 and the highest estimated payment is $2,177.09. (Doc. No. 43-5). This is a significant recovery for Class Members without further risk or expenditures. I find this factor weighs in favor of approving the settlement.

### 6. Opinions of Class Counsel and Class Representatives

The recommendation of skilled class counsel that a court should approve the settlement is entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). In this case both the Class Representatives and Class Counsel approve of the settlement. It is Class Counsel's opinion that this settlement is an "outstanding result" and represents a fair and reasonable settlement for all parties. (Doc. No. 43-4; *see also* Doc. No. 43-3 at 27). This factor also supports approval.

### 7. Reaction of Absent Class Members

The Class Members' reaction to the settlement strongly supports approval. Of the 870 potential Class Members, only 10 requested exclusion and none of those remaining objected to the terms of the settlement. (*See* Doc. No. 43-5). This factor overwhelmingly supports approval.

### 8. Public Interest

I find that public interest favors the settlement of this class action litigation.  This is especially true in the cases involving wage and hour claims, which, by their very nature, implicate the public interest.  Here, the settlement provides substantial relief to the class members, avoids further litigation in a complex set of cases, and frees up judicial resources. Accordingly, I find that this factor weighs in favor of approving the proposed Settlement.

Therefore, given that all factors weigh in favor of approval, I grant the unopposed motion for final approval of settlement.  (Doc. No. 43).

### B.  Attorneys' Fees are Reasonable and Appropriate

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b).  In the context of Rule 23, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Satterly v. Airstream, Inc.,* No. 3:19-CV-107, 2020 WL 6536342, at *9 (S.D. Ohio Sept. 25, 2020).  Class Counsel requests I approve attorneys' fees in the amount of one-third of the Gross Settlement Fund, *i.e.*, $500,000.  (Doc. No. 42-1).  Materion does not object to the requested fee award.

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition.  *Satterly*, 2020 WL 6536342, at *10.  First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach.  *Id.*  Whichever method is utilized, the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."  Second, the court must consider six factors to assess the reasonableness of the fee.  *Id.* (citing *Moulton v. U.S. SteelCorp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

### 1.  Percentage of the Fund Method

9

The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorneys' fee award from a common fund settlement. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"). The percentage approach rewards counsel for success and penalizes it for failure. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). Seeing no reason to deviate from the court's preferred method and Class Counsel's requested method, I approve the use of the percentage of the fund model.

### 2. Ramey Factors

"In reviewing the reasonableness of the requested fee award, courts consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis ([*i.e.*,] the Lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides." *Satterly*, 2020 WL 6536342, at *10. There is no precise formula for weighing these factors. *Id.* In this instance, each of the factors supports granting the requested fee.

Class Counsel's work resulted in an excellent recovery for the Class Members. Given the numerous legal and factual issues that were present in this case, a recovery representing almost 90% of the alleged actual damages is remarkable. Each Class Member's proportional share represents a significant individual recovery without the risk and uncertainty of further litigation. The value is also demonstrated by the fact that only ten members requested to opt out and no objections were lodged against the settlement. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) (noting that "a

small number of objections, particularly in a class of this size, indicate that the settlement is fair, reasonable and adequate").

Society's interest is also served by awarding fees in this instance.  Class Counsel returned a significant benefit to a large number of Class Members, "many of whom would not have been able or willing to pursue their claims individually, and many may not have even known they had a claim against [Materion]."  *Harsh*, 2021 WL 4145720, at *9.  Society has an interest in ensuring the prosecution of collective and class actions and also in incentivizing attorneys to take on these types of cases.

Class Counsel took this case on a solely contingent fee basis.  (Doc. No. 42-1).  Class Counsel assumed the risk that Plaintiffs' claims would not be valid or that the damages recovered would be too low to offset the costs advanced in the litigation.

Class Counsel are specialists in FLSA litigation and have a proven record of success in this area.  (Doc. No. 42-4).  Class Counsel recorded 346.05 hours on this litigation prior to filing their motion for final approval of the settlement.  Calculating the total Lodestar for those hours (using each attorney's standard rate) equates to $185,143.75 in fees.  (*Id.* at 17).  A Lodestar figure may be multiplied to account for the risk, complexity, and results achieved.  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761.

Utilizing the Lodestar calculation above and comparing it to the $500,000 in requested fees results in a multiplier of 2.7, well within the accepted range for these types of cases.  *See e.g.*, *id.* at 767 (Lodestar multiplier of 6.0, noting that the typical Lodestar multiplier in large class actions "ranges from 1.3 to 4.5"); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multiplier ranging from 4.3 to 8.5 to be reasonable).  This multiplier will be reduced by the additional hours that Class Counsel has

already expended on preparing its motion for final approval and will likely expend as the settlement is administered.

The complexity of a FLSA and Rule 23 hybrid wage and hour class/collective action lawsuit is well-established. *Déjà Vu Servs.*, 925 F.3d at 898. This case involved alleged "off-the-clock" work which is difficult to calculate and also implicated other state wage and hour laws which added another layer of complexity. Materion also put forth several defenses that, if found valid, would have substantially limited the available recovery. This action involved complex legal and factual issues which were time-consuming and difficult to synthesize.

Class Counsel is a qualified and experienced wage and hour litigator who has represented employees in class and collective actions in courts across the country with significant success. (Doc. No. 42-4). Materion's counsel is similarly qualified and experienced in employment and corporate defense, including the defense of wage and hour class and collective actions. (Doc. No. 42-1).

For the foregoing reasons, I find that the requested fees are reasonable and grant Plaintiffs' unopposed motion for approval of attorneys' fees and litigation expenses. (Doc. No. 42).

### III. CONCLUSION

Based upon the above, I grant the unopposed motions for final approval of settlement and for approval of attorneys' fees and litigation expenses. (Doc. Nos. 42 & 43). Accordingly, I find as follows:

1. All initial-capped terms contained in this Memorandum Opinion and Order, unless otherwise defined, shall have the same definitions as set forth in the Settlement Agreement, which is attached as Exhibit A to Plaintiff's unopposed motion for final approval;

2. The terms of the Settlement Agreement are fair, reasonable and adequate, and the standards and applicable certification requirements for final approval of this class and collective

action settlement are satisfied, including the provisions of Rule 23 of the Federal Rules of Civil Procedure and the provisions of 29 U.S.C. §§ 201, *et seq.*;

3.  The Agreement is a result of intensive, serious, and non-collusive, arms-length negotiations and was achieved with the aid of an experienced mediator.  The Agreement was entered into in good faith as to each Class Member and will result in substantial savings of time, money, and effort to the Court and the parties, and will further the interests of justice;

4.  All Class Members who did not opt out are bound by this Judgment and the terms of the Settlement Agreement;

5.  Nothing in the Settlement Agreement, this Judgment or the fact of settlement constitutes an admission by any party of liability, wrongdoing, violation of law, damages or lack thereof, or the validity or invalidity of any claim or defense to this lawsuit;

6.  The fees, expenses, and any other costs of Settlement Administrator in administering the Agreement are reasonable.  Payment of $12,349 shall be paid out of the Gross Settlement Fund to Simpluris Inc.;

7.  Plaintiffs Garett Lucyk and Garrett Abraham are confirmed as the Class Representatives, and I approve the Class Representative incentive award as reasonable and appropriate under the circumstances.  Payment of each of the $7,500 awards shall be made from the Gross Settlement Fund;

8.  Kevin J. Stoops of the law firm Sommers Schwartz, P.C. is appointed as Class Counsel for the Settlement Class Members for the purpose of entering into and implementing the Settlement Agreement;

9.  Pursuant to the motion filed by Class Counsel, I approve the payment of attorneys' fees to Class Counsel in the amount of 33.33% of the Gross Settlement Fund, *i.e.*, $500,000; and litigation expenses to Class Counsel in an amount not of $22,738.37.  No other attorneys or law

firms shall be entitled to any award of attorneys' fees or costs from Defendants in any way connected with this litigation.

10.  This lawsuit is dismissed with prejudice.

11.  Without affecting the finality of this Judgment, I reserve jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement and all ancillary matters.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge